IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO NAVARRO,

    Plaintiff,                    No. 2:09-cv-1878 KJM KJN P

    vs.

DEBRA HERNDON, et al.,          SUPPLEMENTAL

    Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        On September 30, 2011, the district judge adopted the undersigned's August 24, 2011 findings and recommendations that defendants' motion to dismiss be granted in part and denied in part,[1] subject to the following exception:[2]

////

---

[1] The court notes that defendants' motion to dismiss did not include a contention that plaintiff failed to exhaust his administrative remedies. Therefore, the notice requirements identified in Wyatt v. Terhune, 315 F.3d 1108, 1115, 1120 n.14 (9th Cir. 2003), recently reiterated throughout Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), are inapplicable.

[2] The district judge also declined to adopt the undersigned's findings that plaintiff's Eighth and Fourteenth Amendment claims should proceed against defendants Grannis and O'Brian. (Cf. Findings and Recommendations (Dkt. No. 78 at 17-20), and Order (Dkt. No. 79 at 2); see also n.11, infra.) Because the district judge dismissed plaintiff's Eighth and Fourteenth Amendment claims against Grannis and O'Brian, and did not direct the undersigned to reconsider these claims, the undersigned does not further address these matters herein.

1

>     This court's review of the complaint has identified an issue not explained in the findings and recommendations:  how the involvement of O'Brian[3] [former CSP-SAC Appeals Coordinator] and Grannis [Chief of Inmate Appeals, Sacramento Appeal Branch Office], in denying the grievances plaintiff identifies in his complaint, see ECF [Docket Entry] No. 1[4] at 21 ¶ 38, violated plaintiff's right of access to the courts.  Having carefully reviewed the file generally, the court finds the remainder of the findings and recommendations to be supported by the record and by the proper analysis. . . . 4.  The court declines to adopt the findings and recommendations as to the First Amendment claim for denial of access to the courts against defendants Grannis and O'Brian and refers consideration of this issue back to the magistrate judge. . . .

(Docket Entry ("Dkt. No.") 79 at 2.)

       For the reasons that follow, the undersigned again recommends that plaintiff's First Amendment denial of access claim proceed against defendants O'Brian and Grannis.[5]

       The district judge's directive requires that the undersigned reconsider whether plaintiff's complaint alleges a sufficient connection or link between the alleged actions of defendants O'Brian and Grannis, and the allegedly resulting deprivation of plaintiff's First Amendment right to access the courts.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act,

---

[3] Defendant O'Brian's name was previously spelled by the undersigned as "O'Brien," consistent with the spelling on her waiver of service.  (Dkt. No. 67.)  Defense counsel subsequently spelled this defendant's name as "O'Brian," used herein.

[4] The operative complaint is not plaintiff's initially-filed complaint (Dkt. No. 1), referenced by the district judge, but plaintiff's First Amended Complaint filed August 10, 2010 (Dkt. No. 24).  By order filed August 10, 2010 (see Dkt. No. 21 at 23), the undersigned ordered the consolidation of plaintiff's typed version of his complaint (Dkt. No. 20 at 11-64), his typed exhibit list (Dkt. No. 20, Exh. E), and his original exhibits (attached to Dkt. No. 1).  These materials were consolidated as plaintiff's First Amended Complaint filed August 10, 2010.  (Dkt. No. 24).

[5] The court acknowledges plaintiff's filing on March 8, 2012 (Dkt. No. 81), which seeks to identify and highlight those portions of the FAC and exhibits that support plaintiff's denial of access claim against defendants Grannis and O'Brian.  The undersigned has relied on this new filing only to the extent that it duplicates the information previously before this court in evaluating defendants' motion to dismiss.

participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977), limited in part on other grounds by Lewis, 518 U.S. at 354. The right, however, "guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356-57. In order to state a denial of access claim under the First Amendment, a prisoner must allege that he suffered an "actual injury" as a result of the defendants' alleged actions, by explaining how the challenged official acts or omissions hindered plaintiff's efforts to pursue a nonfrivolous legal claim. Lewis, 518 U.S. at 351-55. Actual injury may be shown if the alleged shortcomings "hindered his efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts." Id. at 351. The right of access to the courts applies to nonfrivolous direct criminal appeals, habeas corpus proceedings, and Section 1983 actions. Id. at 353 n.3, 354-55. Where a prisoner asserts a backward-looking denial of access claim -- one seeking a remedy for a lost opportunity to present a legal claim -- he must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the official acts frustrating the litigation," and "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Christopher v. Harbury, 536 U.S. 403, 415, 417 (2002).

The right of access to the courts also applies to prison grievance proceedings, Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), abrogated in part on other grounds by Shaw v. Murphy, 532 U.S. 223 (2001), because "a prisoner's fundamental right of access to the courts

hinges on his ability to access the prison grievance system," Bradley, 64 F.3d at 1279. In general, a defendant's participation in the administrative review or denial of a plaintiff's inmate appeal does not give rise to a cause of action, particularly one premised on due process rights. See e.g. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898 (1988) (no constitutional right to an inmate appeal or grievance process); Lewis v. Ollison, 571 F. Supp. 2d 1162, 1170 (C.D. Cal. 2008) (dismissing corrections personnel who simply participated in the review and denial of plaintiff's inmate appeals). However, prison officials have an affirmative obligation to timely and properly process inmate appeals. If the procedures for obtaining an official response to an inmate appeal are not predictable, that is, "not known and unknowable with reasonable effort," Albino v. Baca, 697 F.3d 1023, 1037 (9th Cir. 2012), then the inmate has no administrative remedy. Thus, a correctional official's failure to process an inmate's administrative grievance, rendering the inmate unable to timely or fully access the courts, and resulting in actual legal injury, may state a denial of access claim.

       The District Judge references a paragraph in plaintiff's original complaint (Dkt. No. 1 at 21 ¶ 38), repeated verbatim in plaintiff's operative First Amended Complaint ("FAC") (Dkt. No. 24 at 22-3 ¶ 38),[6] which sets forth only some of the factual allegations[7] in support of

---

[6] In the prior findings and recommendations, this court cited to the internal pagination of the FAC and plaintiff's exhibits; this was inherently confusing due to plaintiff's dual pagination of his FAC (one number typed on bottom middle of each page, a different page number handwritten in a "box" on the bottom right of each page), and the fact that many of plaintiff's exhibits contain unnumbered "back" pages. The instant citations to the FAC and related exhibits reflect the court's electronic pagination only.

[7] The referenced paragraph provides in full (Dkt. No. 24 at 22-3 ¶ 38) (sic) (emphasis deleted):

> On October 2, 2005 and October 24, 2005 Plaintiff filed two (2) CDCR internal inmate appeals - 602's to be released or transferred as Plaintiff stated clearly his retention in AD-SEG and irreparable harm to Plaintiff's appeals case in the California Supreme Court and Federal Court (see exhibit-1 at page 10 in support) and (see exhibit-15 at page 196 in support) the Plaintiff legally harmed by not being provided his access to courts, and requests for his legal property, as Plaintiff diligently did all possible, to access his

plaintiff's claimed denial of access to the courts, mentioning only defendant Morrow.  This claim is more broadly set forth in plaintiff's Third Cause of Action, which challenges, in pertinent part, "the direct denials of Defendants to provide Plaintiff with his court legal appeal property documents . . . ." (id. at 39).[8]

The undersigned considered these allegations in tandem with plaintiff's other relevant allegations set forth in his FAC (54 pages in length), and exhibits (totaling more than 400 pages).  As this court found in its initial screening order, the FAC alleges that plaintiff filed several administrative grievances, which alleged that prison officials had failed to forward plaintiff's legal and in forma pauperis materials to designated courts, improperly withheld

---

property and court (see exhibit-15 at page 208) here defendant Morrow never provided Plaintiff's right to legal property or law library.  Plaintiff asserts as a direct result of these denials he could not set forth grounds on direct appeals, in which today in his criminal conviction appeal to the U.S. Central District, plaintiff is continually subject to adverse litigation by the California Attorney General and Court, for procedural default, failure to exhaust on direct appeal, and issue's not raised during direct appeals in case Navarro v. Sullivan, case No. CV07-1593-SGL(PJW) again on-going adversely to adjudications.

[8] Plaintiff's Third Cause of Action provides in full (Dkt. No. 24 at 39):

(FIRST AMENDMENT -- RIGHT OF ACCESS TO COURTS DENIED FOR PLAINTIFF'S RIGHT TO ACCESS HIS ACTIVE APPEAL LEGAL DOCUMENTS PROPERTY AND PRISON LAW LIBRARY)

75) Plaintiff re-alleges and incorporates by references all previous paragraphs of this complaint.

76) Defendants have violated Plaintiff's First Amendment Rights by the direct denials of Defendants to provide Plaintiff with his court legal appeal property documents, and access to prison law library upon formal previous verbal and written notice's while in (AD-SEG).  Defendants arbitrarily promulgating, enforcing and implementing overbroad rules and/or the interpretation of regulations unjustifiably curtail Plaintiff's limited already existing access to courts Constitutional Rights, of rights to file grievances, and access courts, said laws, rules and/or regulations do not forbid any person from having access to his active court litigation(s) documents for ten months.  Said rules and/or regulations are not arbitrarily used to deny any litigant, and Defendants had no reasonably related, or any penological interest to deny Plaintiff access to courts.

5

1  plaintiff's mail, and failed to respond to plaintiff's complaints that officials harassed plaintiff, and
2  retaliated against him, for attempting to exercise his First Amendment right to file grievances.
3  (See Dkt. No. 21 (Screening Order) at 10-11, 18; Dkt. No. 24 (FAC) at 23-24 (¶¶ 40-42), 25-26 (¶
4  50), 28-30 (¶ 53, §§ c, f)).  Broadly construed, as required, see e.g. Scheuer v. Rhodes, 416 U.S.
5  232, 236 (1974),[9] plaintiff's many exhibits (i.e., multiple administrative grievances and letters that
6  allegedly were not acted upon and/or returned) lend support for his claim that the appeals
7  supervisors -- i.e. defendants O'Brian and Grannis -- intentionally blocked (or knowingly failed to
8  prevent their subordinates from blocking) plaintiff's legitimate efforts to utilize the appeals
9  process to obtain his own legal documents essential for seeking redress in the courts.
10          For example, in a letter to Grannis dated January 10, 2006, plaintiff expressly
11  alleged that O'Brian had deliberately failed to act on five of plaintiff's specified administrative
12  grievances, which included challenges to court access and mailroom processing.  (See Dkt. No.
13  24, Exhs., at 240-42.)  Plaintiff attached copies of the letters he had written to the Office of
14  Internal Affairs on January 7, 2006, and January 30, 2006, which expressed the same complaints,
15  and included an allegation that the "Chief of Inmate Appeals" (Grannis) had not responded to
16  plaintiff's communications.  (Id. at 244-60.)  It appears that O'Brian thereafter returned some or
17  all of these documents to plaintiff on February 15, 2006, without processing.  (Id. at 253.)
18  Moreover, it appears that Grannis belatedly responded to plaintiff's letters, declined to address
19  plaintiff's concerns, and directed plaintiff back to O'Brian:  (1) the first response, dated April 15,
20  2006, apparently signed by Grannis, informs plaintiff that "your appeal . . . is in process within the
21  Inmate Appeals Branch . . . . [T]he Appeals Coordinator [O'Brian]. . . can answer any questions
22  you have . . . ." (id. at 239); (2) the second response, dated April 28, 2006, and initialed on behalf

---

[9] The court is required to construe the alleged facts "in the light most favorable to the plaintiff," County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241 n.1 (9th Cir. 2009), to determine whether plaintiff has "raise[d] a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007), that is, asserted "enough facts to state a claim to relief that is plausible on its face," id.  at 570.

of Grannis, informs plaintiff that "[y]our concerns can be best addressed by filing a CDC Form 602 . . . . [T]he Appeals Coordinator [O'Brian] . . . can answer any questions you have . . . ." (id. at 243).

The alleged inaction by Grannis (moreover, the referral of plaintiff back to O'Brian), and the alleged refusal of O'Brian to process plaintiff's grievances, were liberally construed by the undersigned to allege a sufficient linkage with plaintiff's "denial of access" claims. As the undersigned stated in the screening order, Grannis' affirmative act of denying as moot (rather than addressing the merits of) plaintiff's "comprehensive" administrative grievance, "coupled with plaintiff's allegations that [Grannis] knowingly failed to intervene or direct [his] subordinates [including O'Brian] to intervene, on plaintiff's behalf, are sufficient to state [a] potential prima facie failure to supervise/train claims, viz., that [Grannis] 'fail[ed] to train subordinate officer[s] and prevent them from maintaining a continuous pattern of retaliation(s) and harassment for Plaintiff's exercise of his First . . . Amendment rights of access to courts . . . ." (Dkt. No. 21 at 18 (internal citation omitted).) Moreover, these allegations served, in part, to sustain the continued presence in this action of all three named supervisory defendants, viz., CSP-SAC Warden Kernan, Associate Warden Walker, as well as Appeals Coordinator Grannis.

Subsequently, in this court's findings and recommendations, the undersigned recounted plaintiff's alleged actual injuries due to his allegedly impaired access to the courts: "(1) his inability to present a timely and complete petition for review before the California Supreme Court, in the direct appeal of his criminal conviction, citing case number LA042924, and California Supreme Court Case No. S138165; and (2) plaintiff's inability to fully state all grounds in support of his habeas corpus petition filed in the United States District Court for the Central District of California, resulting in the dismissal of claims based on procedural default, failure to exhaust, and failure to raise issues on direct appeal in the state courts. This court's review of plaintiff's habeas action, Navarro v. Sullivan, Case No. Civ-07- 1593 DDP [previously SGL] PJW, supports plaintiff's assertion that he failed to exhaust his state court remedies on some

claims. (See generally id. at Dkt. No. 61 (according plaintiff (petitener therein) the option of dismissing his unexhausted claims and proceeding on his exhausted claims, or to have his entire petition dismissed as 'mixed.')." (Dkt. No. 78 at 21 (fn. omitted).) As the undersigned previously noted, the demonstrated failure of plaintiff to exhaust state court remedies on his habeas claims lends substantial support for plaintiff's claim that his alleged denial of access to the courts caused him actual injury. Significantly, defendants did not file objections to the undersigned's findings and recommendations.

      The undersigned has again reviewed the record, and again finds support for plaintiff's general allegations that the failure of any official to respond to several of plaintiff's grievances resulted in a denial of access to the courts. As set forth in plaintiff's exhausted administrative grievance initiated on October 24, 2005 (Log No. CA 05-02084), plaintiff alleged in part that, during his continued placement in the Administrative Segregation Unit ("ASU"),[10] his legal materials were improperly withheld and officials failed to respond to plaintiff's prior administrative grievances, causing plaintiff "irreparable harm (my appeals case in Supreme/Federal Court)" (Dkt. No. 24 at 70). Plaintiff explained that, "I have had my appeal in the California Supreme Court and that date was started on September 14, 2005. I submitted less than half of what is expected of this court for review. I could not even make copys (sic) of factual exhibit documents to show the court my full case. I now have to explain to the court why I was at a disadvantage. . . . I will [also] ask the Federal Court on my habeas corpus to inquire . . . ." (Id. at 71.) Plaintiff again alleged that, "My California Supreme Court Appeal is affected by this on my appeals process" (id. at 75) and, more specifically, "This restrictive Ad-Seg has effected my ability to prepare my case. I need to show the courts legal cause now. And copys (sic) of all documents in C-file from 5-4-05 until present concerning Ad-Seg." (Id. at 76.) Defendant

---

[10] Shortly after plaintiff's ASU placement, he was approved for transfer to the general population of another institution; however, such transfer was repeatedly postponed and plaintiff spent nearly a year in CSP-SAC's ASU.

O'Brian investigated this grievance at the Second Level of Review.  (Id. at 85.)

Similarly, during this same period, plaintiff apparently submitted an unexhausted grievance expressly premised on an alleged denial of "access to courts" (Dkt. No. 24-2 at 16-20), in which he alleged that he had "already been harmed by not being called previously for law library in my petition for review in the California Supreme Court . . . ." (id. at 18).  Plaintiff complained therein that his prior grievances and requests to process his in forma pauperis applications/trust account statements had not been acted upon.

For these many reasons, the undersigned again finds that plaintiff's right of access claims against O'Brian and Grannis are properly premised on his allegations that, despite directly informing these defendants of his concerns (including the alleged refusal of officials to process grievances, in forma pauperis certificates, and legal mail, resulting in alleged legal harms to plaintiff), each official failed personally to respond or, based on their respective supervisory roles, failed to direct a response by another correctional official.  The undersigned concedes that plaintiff's denial of access claims against Grannis and O'Brian may prove unsubstantiated on a motion for summary judgment.  However, the undersigned's review of plaintiff's complaint and exhibits reinforces this court's original assessment that it is reasonable to hold defendants Grannis and O'Brian to answer plaintiff's denial of access claims.

Accordingly,  IT IS HEREBY RECOMMENDED that, in addition to the claims and defendants identified in the district judge's order filed September 30, 2011 (Dkt. No. 79),[11] this action should proceed on plaintiff's denial of access claims against defendants Grannis and O'Brian.

---

[11] The district judge ruled that this action shall proceed on the following claims (Dkt. No. 79 at 2):

- Plaintiff's First, Eighth and Fourteenth Amendment claims against defendants Kernan, Walker, Baxter, Baker, Sclafani, and Morrow.

- Plaintiff's First Amendment retaliation claim against defendants Grannis and O'Brian.

1    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  December 6, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

nava1878.supp.f&r.