1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARIO NAVARRO,                              No.  2:09-cv-1878 KJM KJN P

12                   Plaintiff,

13          v.                                   FINDINGS AND RECOMMENDATIONS

14   DEBRA HERNDON, et al.,

15                   Defendants.

16

17          Plaintiff is a state prisoner currently incarcerated at Ironwood State Prison in Blythe,

18   California.  Plaintiff proceeds, in forma pauperis and without counsel, in this civil rights action

19   filed pursuant to 42 U.S.C. § 1983, in which he challenges the conditions of his confinement

20   while incarcerated at California State Prison-Sacramento ("CSP-SAC").  The action proceeds on

21   plaintiff's amended complaint.  Presently before the court is defendants' motion for summary

22   judgment.  For the reasons set forth below, the undersigned recommends that defendants be

23   denied summary judgment based on the law of the case.

24   I.  Background

25          A.  Factual Allegations

26          Relevant factual allegations in plaintiff's amended complaint (ECF No. 24) are

27   summarized as follows.

28   ////

                                                    1

1    In 2003, plaintiff, a Native American, was sentenced to California state prison for a term

2    of 55 years to life.  (See ECF No. 21 at 4, ECF No. 24 at 16.)

3    Plaintiff alleges that, upon admittance by the California Department of Corrections and

4    Rehabilitation ("CDCR"), he was given an incorrect mental health diagnosis and improperly

5    placed in a mental health treatment program.  (ECF No. 24 at 15-16.)  He contends that he was

6    given psychiatric medications against his will, and at one point forced to remain in a suicide

7    watch cell until he took his medications.  (Id. at 19-22.)

8    On June 30, 2004, plaintiff was transferred to CSP-SAC.  (Id. at 16.)  In 2005, plaintiff

9    began filing administrative grievances in connection with how his alleged mental health issues

10   had been handled.  (Id. at 20-21.)  He also sought legal assistance regarding the matter.  (Id.)

11   According to plaintiff, at this time he began to face reprisals from CSP-SAC personnel.  (Id.)

12   On May 4, 2005, plaintiff was placed in administrative segregation ("Ad Seg") at CSP-

13   SAC.  (Id. at 21-22.)  Plaintiff contends that there was no legitimate basis for the placement.  At

14   the time of the Ad Seg placement, plaintiff had been seeking a transfer to California State Prison-

15   Los Angeles County ("CSP-LAC"), in Lancaster, California, in order to be closer to his mother's

16   residence; that transfer could not take place while plaintiff was in Ad Seg.  (Id. at 22.)  In October

17   2005, plaintiff filed an administrative grievance which, according to plaintiff, challenged his

18   placement and retention in Ad Seg, withholding of legal property, denial of law library access,

19   and interference with his access to the courts.  (Id. at 22-3.)  Plaintiff contends that many of those

20   actions were taken on a retaliatory basis.  (Id. at 24-28.)  While in Ad Seg, plaintiff filed several

21   other inmate grievances, including one group grievance.  (Id. at 23-4.)  He also filed state tort

22   claims against CDCR, alleging physical and mental injuries.  (Id. at 24.)

23   On March 9, 2006, plaintiff was transferred to CSP-LAC.  (Id. at 25.)

24   Plaintiff alleges that his commitment to CSP-SAC's Ad Seg Unit, and his prior

25   commitment to mental health treatment programs, constituted cruel and unusual punishment.  He

26   details the allegedly oppressive physical conditions of his confinement, his inability to participate

27   in any recreational or religious activities (alleging that, while in Ad Seg, he was permitted only

28   two days of access to the exercise yard, and denied access to various forms of religious services,

including contact with clergy on the death of family members), deprivation of social contact and mental stimulation, and resulting physical and psychological injuries, including "vision impairment, frequent headache[s], shortness of breath, exhaustion and fatigue, insomnia and anxiety attacks, memory loss, stress and fear of correctional employee custody and staff, and mental health psychiatric personnel further reprisals and retaliations, to discredit me." (Id. at 31; see, generally, id. at 30-34.)

    B.  Procedural History

    This action commenced on July 9, 2009.  (ECF No. 1.)  After screening, the court permitted plaintiff to proceed on his amended complaint.  (ECF No. 21.)

    On November 19, 2010, defendants moved to dismiss the amended complaint.  (ECF No. 38.)  On August 24, 2011, the court filed findings and recommendations recommending that defendants' motion to dismiss be granted in part and denied in part.  (ECF No. 78.)  Specifically, the court recommended that plaintiff be permitted to proceed on the following claims:

- Fourteenth Amendment Due Process claims against defendants Kernan, Walker, Baxter, Baker, Sclafani, and Morrow stemming from plaintiff's placement and retention in CSP-SAC's Ad Seg unit, "either pursuant to their participation in the [Ag Seg][1] Institutional Classification Committee . . . and/or in their substantive involvement and responses to plaintiff's exhausted administrative grievance challenging such placement and retention."  (Id. at 7.)

- Eighth Amendment claims against defendants Kernan, Walker, Grannis, O'Brian, Baxter, Baker, and Sclafani "based on the fact and continuation of plaintiff's [Ad Seg] detention . . . [and/or] the physical conditions of plaintiff's [Ad Seg] confinement." (Id. at 18.)

- First and Fourteenth Amendment Free Exercise claims and a Fourteenth Amendment Equal Protection claim against defendants Kernan, Walker, Grannis, O'Brian, Baker,

---

[1] The court's prior findings and recommendations erroneously characterized plaintiff as having alleged that he was housed in CSP-SAC's Secured Housing Unit, rather than its Administrative Segregation Unit.  That error has been corrected herein.

and Sclafani due to "restrictions on plaintiff's right to exercise his religious beliefs . . . [while] housed in [Ad Seg] . . . [and/or] the denial of visitation by a spiritual advisor, particularly when members of plaintiff's family died . . . ." (<u>Id.</u> at 19-20.)

- First Amendment retaliation claims against O'Brian, Grannis, Morrow, Sclafani, and Baker based on the following acts allegedly taken in retaliation for plaintiff's filing of administrative grievances: "further refusing to process administrative grievances . . . refusing plaintiff access to his legal property and to the law library . . . [and/or] failing to remedy adverse conditions of confinement, [as well as] denying plaintiff access to [the] exercise yard, or to [a] religious advisor." (<u>Id.</u> at 22.)

The court recommended that plaintiff's remaining claims be dismissed.

On September 30, 2011, the district judge largely adopted these findings and recommendations, but referred back to the court the issue of whether defendants Grannis and O'Brian had interfered with plaintiff's submission of administrative grievances and court filings, and thereby violated plaintiff's First Amendment right of access to the courts. (ECF No. 79.) On December 7, 2012, the undersigned issued supplemental findings and recommendations recommending that plaintiff be permitted to proceed with this First Amendment claim. (ECF No. 84.) The supplemental findings and recommendations were adopted on March 26, 2013. (ECF No. 89.)

On August 1, 2013, defendants filed a motion to dismiss based on plaintiff's alleged failure to exhaust administrative remedies. (ECF No. 107.) That motion was mooted by the Ninth Circuit's subsequent opinion in <u>Albino v. Baca</u>, 747 F.3d 1162 (9th Cir. 2014) (en banc) (holding that defendants may no longer raise the affirmative defense of administrative exhaustion via an unenumerated Rule 12(b) motion). On May 13, 2014, defendants filed the instant motion for summary judgment, contending that plaintiff failed to properly exhaust administrative remedies regarding all but one of his claims. (ECF No. 147.) On June 26, 2014, plaintiff filed an opposition to this motion. (ECF No. 151.) On July 7, 2014, defendants filed their reply.

In ruling on a motion for summary judgment, the court would ordinarily begin by determining which facts were undisputed by the parties for purposes of the motion. However, as

4

discussed in greater detail below, the court has determined that defendants' summary judgment motion must be denied as a matter of law based on the law of the case. Accordingly, the court makes no findings as to undisputed facts.

II. Legal Standards

    A. Legal Standard for Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

The administrative grievances at issue in this matter were filed prior to January 28, 2011, the date on which CDCR issued revised regulations governing administrative complaints by prisoners. See Cal. Code Regs. tit. 15, § 3084.7. Under the previously-effective regulations,

5

1    prisoners were provided the right to appeal administratively "any departmental decision, action,

2    condition or policy which they can demonstrate as having an adverse effect upon their welfare."

3    Cal.Code Regs. tit. 15, § 3084.1(a) (2010).  Prisoners were also provided the right to file appeals

4    alleging misconduct by correctional officers and officials.  Id. § 3084.1(e).  In order to exhaust

5    available administrative remedies within this system, a prisoner was required to proceed through

6    four levels of appeal:  (1) informal resolution, (2) formal written appeal on a 602 inmate appeal

7    form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the

8    Director of CDCR.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code

9    Regs. tit. 15, § 3084.5).  A final decision at the Director's level of review satisfied the exhaustion

10   requirement.

11       In order to "lodge [a]n administrative complaint on CDC Form 602, prisoners were

12   required 'to describe the problem and action requested.'"  Morton v. Hall, 599 F.3d 942, 946 (9th

13   Cir. 2010) (quoting Cal. Code Regs. tit. 15, § 3084.2(a) (2010)).  The content of a grievance was

14   sufficient if it "alert[ed] the prison to the nature of the wrong for which redress [wa]s sought."

15   Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal

16   terminology or legal theories unless they are in some way needed to provide notice of the harm

17   being grieved.  A grievance also need not contain every fact necessary to prove each element of

18   an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem

19   and facilitate its resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

20       Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock,

21   549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[2]

22   "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

23   should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

24   2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

25   and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

26   _____

27   [2]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]
     defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.
     Relevant evidence includes statutes, regulations, and other official directives that explain the

28   scope of the administrative review process.  Id. at 1032.

1  defense meets its burden, the burden shifts to the plaintiff to show that the administrative

2  remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

3          A prisoner may be excused from complying with the PLRA's exhaustion requirement if

4  he establishes that the existing administrative remedies were effectively unavailable to him.  See

5  Albino, 747 F.3d at 1172-73.  When an inmate's administrative grievance is improperly rejected

6  on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell,

7  623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir.

8  2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

9  Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown

10 v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where

11 appeal granted at second level and no further relief was available).

12         If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

13 failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

14 Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

15         B.  Legal Standard for Summary Judgment

16         Summary judgment is appropriate when it is demonstrated that the standard set forth in

17 Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

18 movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

19 judgment as a matter of law."  Fed. R. Civ. P. 56(a).

20                 Under summary judgment practice, the moving party always bears
                   the initial responsibility of informing the district court of the basis
21                 for its motion, and identifying those portions of "the pleadings,
                   depositions, answers to interrogatories, and admissions on file,
22                 together with the affidavits, if any," which it believes demonstrate
                   the absence of a genuine issue of material fact.
23

24 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

25 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

26 only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

27 Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

28 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

1    committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

2    burden of production may rely on a showing that a party who does have the trial burden cannot

3    produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

4    should be entered, after adequate time for discovery and upon motion, against a party who fails to

5    make a showing sufficient to establish the existence of an element essential to that party's case,

6    and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

7    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

8    necessarily renders all other facts immaterial."  Id. at 323.

9         Consequently, if the moving party meets its initial responsibility, the burden then shifts to

10   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

11   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

12   establish the existence of such a factual dispute, the opposing party may not rely upon the

13   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

14   form of affidavits, and/or admissible discovery material in support of its contention that such a

15   dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

16   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

17   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

18   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

19   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

20   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

21   (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

22   1564, 1575 (9th Cir. 1990).

23        In the endeavor to establish the existence of a factual dispute, the opposing party need not

24   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

25   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

27   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

28   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

1   amendments).

2          In resolving a summary judgment motion, the court examines the pleadings, depositions,

3   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

4   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

5   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

6   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

7   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

8   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

9   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

10  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

11  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

12  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

13  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

14         By contemporaneous notice served on May 13, 2014 (see ECF Nos. 147 at 3, 147-1 at 1-

15  3), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56

16  of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998)

17  (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

18  III.  Analysis

19         Defendants move for summary judgment on the grounds that, prior to bringing this

20  lawsuit, plaintiff failed to exhaust administrative remedies as to all but one of his claims.

21  Defendants (i) concede that plaintiff properly exhausted administrative remedies with regards to

22  his grievance Log. No. SAC–05–2084, and (ii) concede that, in so doing, plaintiff properly

23  exhausted administrative remedies as to his Fourteenth Amendment due process claim.  (See ECF

24  No. 147-2 at 2.)  The parties disagree, however, on what other claims, if any, plaintiff exhausted

25  by filing this grievance.

26         The court begins by noting that it has addressed the question of exhaustion in prior orders

27  in this case.  On November 19, 2010, defendants moved to dismiss all but one of the claims in

28  plaintiff's amended complaint on statute of limitations grounds.  (See ECF No. 38.)  In order to

9

1  determine whether plaintiff had met the applicable statutes of limitations, the court was required

2  to assess whether, and when, plaintiff had administratively exhausted his claims.

3      In its findings and recommendations filed August 24, 2011, the court carefully considered

4  the contents of grievance Log No. SAC-05-2084 and determined, first, that the grievance was

5  fully-exhausted, and second, that it "challenge[d] plaintiff's confinement in CSP-SAC's [Ad

6  Seg], both intrinsically, and based on the conditions of confinement therein."  (ECF No. 78 at 8.)

7  In other words, the court determined that plaintiff had exhausted administrative remedies with

8  respect to his First Amendment Free Exercise claim, his Fourteenth Amendment Due Process,

9  Free Exercise, and Equal Protection claims, and his Eighth Amendment claim, each of which

10  challenged the basis for plaintiff's confinement in Ad Seg and/or the conditions of his

11  confinement therein.  The court then found that plaintiff had met the applicable statutes of

12  limitations, and recommended that plaintiff be permitted to proceed on these claims.  (Id. at 23.)

13  The portion of the findings and recommendations in which the exhaustion determination appeared

14  were adopted by the district court.  (See ECF No. 79).  And, as plaintiff points out in his

15  opposition, defendants at no point objected to or sought reconsideration of this determination.

16  (ECF No. 151 at 24.)

17      Thereafter, in its supplemental findings and recommendations filed December 7, 2012, the

18  court determined as follows:  "As set forth in plaintiff's exhausted administrative grievance

19  initiated on October 24, 2005 (Log No. CA 05–02084), plaintiff alleged in part that, during his

20  continued placement in [Ad Seg], his legal materials were improperly withheld and officials

21  failed to respond to plaintiff's prior administrative grievances, causing plaintiff 'irreparable harm

22  (my appeals case in Supreme/Federal Court)[.]'"  (ECF No. 84 at 8.)  These allegations are the

23  basis of plaintiff's claim under the First Amendment for interference with his right of access to

24  the courts, as well as his First Amendment retaliation claim.  Again, the district court adopted the

25  supplemental findings and recommendations (ECF No. 89), and defendants neither objected to

26  nor sought reconsideration of this determination.

27      Under the doctrine of the law of the case, "a court will not reexamine an issue previously

28  decided by the same or higher court in the same case."  Lucas Auto Eng'g, Inc. v.

10

1   Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001).  The court may exercise its

2   discretion to depart from the law of the case only if one of these five circumstances is present:

3   (1) the first decision was clearly erroneous; (2) there has been an intervening change of law;

4   (3) the evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest

5   injustice would otherwise result.  United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

6   It is an abuse of discretion for a court to depart from the law of the case without one of these five

7   requisite conditions.  Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).

8          The court's prior determinations regarding grievance Log No. SAC-05-2084 now

9   constitute the law of the case, and will not be revisited.  Defendants' briefing in support of their

10  motion for summary judgment does not demonstrate that the court's prior decisions were clearly

11  erroneous; in fact, defendants have altogether failed to address the court's prior determinations

12  regarding exhaustion.  No new evidence has been presented to the court.  There has been no

13  intervening change of law.  Defendants have neither shown the presence of changed

14  circumstances nor demonstrated that a manifest injustice would occur if the court failed to revisit

15  its previous determination.

16         Accordingly, it is the law of the case that plaintiff exhausted administrative remedies with

17  respect  to the claims on which he has been permitted to proceed.  Defendants are therefore not

18  entitled to summary judgment on this basis.

19  IV.  Conclusion

20         In light of the foregoing, IT IS RECOMMENDED that defendant's motion for summary

21  judgment (ECF No. 147) be denied in its entirety.

22         These findings and recommendations are submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24  after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

27  objections shall be served and filed within fourteen days after service of the objections.  The

28  ////

1  parties are advised that failure to file objections within the specified time may waive the right to

2  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  February 6, 2015

4

5                                                          KENDALL J. NEWMAN
                                                           UNITED STATES MAGISTRATE JUDGE
6  /nava1878.msj.fte

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28